UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.  8:05-cr-527-T-23AEP
8:08-cv-1086-T-23AEP

BRYAN TIMOTHYLEENARD SMITH
                                                              /

**O R D E R**

Smith's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his convictions for conspiracy to obstruct commerce, obstruction and attempted obstruction of commerce by robbery, and carrying a firearm.[1]  Smith serves 1,680 months (140 years).  The United States admits that the motion to vacate is timely. Response at 4 (Doc. 7).  The motion to vacate lacks merit for all claims but two, which claims require an evidentiary hearing.

Several robberies occurred in November and December, 2005, in Polk County, Florida, in which the two assailants wore bandanas, sweatshirts, and gloves.  Smith and Jamail James Hogan (who is Smith's half-brother) were tried separately based on Bruton v. United States, 391 U.S. 123 (1968), and were convicted.  In several of the robberies a gun was fired.  A cashier died from a gun shot wound inflicted during one of the robberies.  Smith admitted to driving Hogan to several of the robberies but denied knowing that a robbery was planned or that a robbery occurred.  The defense argued

---

[1] The firearm was carried and discharged by Smith's accomplice.  Smith received an increased sentence because the firearm was discharged during a crime of violence.

that the evidence was insufficient to prove that Smith was the second robber. Smith asserts several claims of ineffective assistance of trial counsel.

## **FACTS**[2]

On November 26, 2005, Hogan and an accomplice committed both a carjacking with serious bodily harm at a motel and an armed robbery at a convenience store. The next day Hogan and an accomplice robbed two more convenience stores. A week later Hogan and an accomplice robbed a small grocery store, during which a cashier was shot in the chest and died three weeks later. The second cashier recognized Hogan, who was a frequent customer. Four eyewitnesses saw the two men exit the convenience store and flee in the "getaway car." Later that night sheriff's deputies arrested Hogan for speeding, and, during a search of vehicle, the police discovered a .380 automatic handgun, ammunition for that gun, a type of baton commonly carried by police officers, and several articles of clothing that matched the distinctive clothing the robbers wore during the last robbery. Later testing showed that the gun discovered in the car had fired each shot during each robbery. Additionally, testing showed that the shoes Hogan was wearing matched prints from the last robbery and another pair of shoes seized from Hogan's residence matched prints at two of the other robberies. Finally, a business card holder for the owner of the truck stolen during the carjacking and the truck's keys were found in Hogan's residence.

---

[2] This summary of the facts derives from the circuit court's decision (Doc. 160) on direct appeal in 8:05-cr-527-T-23MAP.

While police were interviewing Hogan after his arrest, Smith called Hogan's cellular telephone.[3] The police answered the call and, because the car Hogan was driving when he was arrested matched the description of the "getaway car" used earlier in that day's robbery and the car was registered to Smith, the officer asked Smith to come to the police station. Smith complied. The following facts are from the opinion on direct appeal (Doc. 160 at 9-10) (emphasis original):

> After he arrived and was advised of his rights, Smith first acknowledged that the car was his, and when he was informed that a gun had been found in the car, he responded that the gun belonged to his brother [(Hogan)]. Smith also recounted his actions earlier during the day, initially denying that he was at Bill's Market, despite that Detective Moran had told Smith that he (Moran) was investigating an incident at Bill's Market. When Moran told Smith that witnesses had seen his car parked on a dirt road next to Bill's Market, Smith recanted his original story and stated that he had driven Hogan and another man to Bill's Market. Smith claimed that he had stood next to the vehicle while Hogan and the other man went into the store. Smith told agents that Hogan and the other man subsequently came running out of the store and had jumped into the car. Smith said that he did not realize anything was wrong until one of the store employees came running out of the store. Moran also asked Smith about the other items found in the Cavalier, including a red "Dirty South" sweatshirt. Smith claimed that he had loaned it to the unknown man who had gone into Bill's Market with Hogan. Smith further stated that the baton or club found in the Cavalier was his father's and that he had taken the baton from the garage of his house and put it in his car sometime during the previous week.
>
> Smith further stated that he had driven Hogan and another man he knew as "Pooky" to the Speedy Food Mart robbery on November 26th, and the November 27th robberies at the Circle K and the Island Foods Store. Again, Smith claimed that he had not participated in any of the robberies. He said during all of the armed robberies, he had remained in the car and had not known that the robberies were taking place.

---

[3] Smith faults counsel for not obtaining his cellular telephone records, which he contends would show that the police called him. In a post-conviction proceeding, the defendant bears the burden of proof. Because he fails to provide the records, Smith fails to show prejudice.

At trial, Smith offered no opening statement and presented no evidence, instead choosing to assert solely through cross-examination of three of the government's witnesses his theory of defense—that, although he drove the "getaway car" to some of the armed robberies, he remained in the car and did not know that his two companions were committing robbery. The jury found Smith guilty of the November 27th and December 2nd robberies—the ones in which he admittedly drove the "getaway car"—and not guilty of the carjacking and robbery on November 26th.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Smith claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S. Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Smith must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92.  To meet this burden, Smith must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Smith cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)). See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## **DISCUSSION**

Smith must prove that counsel's decisions were unreasonable. Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."); Minton v. Sec'y, Dep't of Corr., 271 Fed. App'x 916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (quoting Wiggins v. Smith, 539 U.S. 510, 521 (2003). Counsel's trial strategy was to press the notion that Smith drove

- 6 -

the car and had no knowledge of the robberies.  Defense counsel summarized this

theory during his closing argument (Doc. 153 in 05-cr-527 at 57-58):

> It is reasonable to believe that the first time [Smith] knew what happened in the store was when Defective Moran showed him the photographs of the robbery inside the store.  That is when he knew what happened.  He may have been covering for his brother [(Hogan)] not knowing what happened early on when he showed up willingly.  He wasn't arrested.  No one came out and got him.  He didn't try to escape.  He didn't say, "I will send somebody else to pick my car up."  He went there with his girlfriend's mother and his girlfriend.  They go to police headquarters to get the car, assume he is going to pick up the car. . . .  No consciousness of guilt. . . .
>
> If he had not gone and said, "I will talk to you later," or "I'll be there with my lawyer," then you have got to wonder why would he hesitate to do that.  Instead you have to wonder why would he show up if he had five heinous crimes attached to him including an attempted murder?  Why?  Because he didn't know what happened inside the Speedy Food Mart.  He didn't know what happened in the Island Food Store.  He didn't know what happened at the Circle K.  And he didn't know what happened in Bill's Market.

Closing Argument:

Smith asserts that defense counsel's closing argument was clear evidence of

deficient performance because counsel (1) argued that Detective Moran testified

truthfully, (2) revealed that Smith faced "other problems," and (3) asked that the jury

"come back with a guilty verdict to all counts."  (Doc. 153 in 05-cr-527 at 66)  Early in his

closing argument defense counsel attested to his belief that Smith was innocent.  "Make

no mistake about it, my position on this case is that my client is innocent of all charges."

(Doc. 153 in 05-cr-527 at 53)  The "come back with a guilty verdict" statement is an

obvious mis-statement that caused Smith no prejudice because the jury (and everyone

else) immediately disregarded the words (if heard at all) and the jury returned a "not

guilty" verdict on several counts.  Smith fails to show how Moran's testimony was not

- 7 -

truthful. After placing the "other problems" statement into proper context, the response (Doc. 7 at 13) correctly argues that "[c]ounsel was simply pointing out that the charges for which his client was on trial for were more significant than any potential state charge for wearing a disguise." Smith fails to show both deficient performance and prejudice.

Motion to Sever:

Smith faults counsel for not opposing the motion to sever. The indictment charged Smith and Hogan with several robberies. Both defendants provided a statement after Miranda warnings, in which each incriminated the other. The United States moved (Doc. 46 in 05-cr-527) to sever the trials based on Bruton because redacting both statements was not practicable. Hogan concurred. (Doc. 53 in 05-cr-527) During the hearing on the motion to sever Smith's counsel concurred that severance was proper. (Doc. 137 in 05-cr-527 at 4) The Magistrate Judge granted the motion to sever and stated, "Both parties agree with the government's application of Richardson [v. Marsh, 481 U.S. 200 (1987)], and neither object to the severance." (Doc. 65 at 2 in 05-cr-527) Although he now faults counsel for not opposing the motion to sever, Smith fails to provide a practical reason for opposing severance. Strickland requires proof of both deficient performance and prejudice. Smith fails to show he was prejudiced by counsel's allegedly deficient performance.

Motion in Limine:

Smith faults counsel for not moving to exclude testimony about the death of a store clerk at the last robbery. The video recording clearly shows that Hogan shot the victim through the chest and, after exiting the victim's back, the bullet struck an

- 8 -

advertisement sign, causing the sign to spin. Some of the distinctive clothing shown on the video recording was found inside Smith's car when Hogan was arrested. Hogan was charged with discharging a firearm during a crime of violence. Smith, as the accomplice, is responsible for Hogan's acts. The victim's death explained to the jury why that person was not testifying. Smith fails to show that trial counsel could have precluded testimony about the death.[4]

Cross-Examinations:

Smith faults counsel for not cross-examining each government witness. Counsel's decision whether to—and how to—cross-examine is a strategic decision entitled to deference. Dorsey v. Chapman, 262 F.3d 1181 (11th Cir. 2001), cert. denied 535 U.S. 1000 (2002). The defense was that Smith did not enter the stores. Because no witness could identify Smith as one of the robbers and because the defense strategy conceded the robberies occurred, cross-examination of each witness was unnecessary.

Pre-Sentence Report:

Neither party objected to the pre-sentence report at sentencing. In affirming Smith's sentence on appeal, the circuit court stated, "Where a defendant does not object to statements in the PSI, the district court may rely on those undisputed statements, even in the absence of supporting evidence. See United States v. Hedges, 175 F.3d 1312, 1315 (11th Cir. 1999)." (Doc. 160 in 05-cr-527 at 20)

---

[4] The pre-sentence report represents that the medical examiner reported that the gunshot wound was the cause of death. Ineffective assistance of counsel requires proof of both deficient performance and prejudice. Assuming that Smith shows deficient performance because counsel failed to object to the lack of testimony about the cause of death, Smith cannot prove prejudice because the prosecution would have presented the medical examiner's testimony or introduced the medical examiner's report officially establishing the cause of death.

- 9 -

Smith's base offense level was 20, which was increased to 43 because "a victim was killed under circumstances that would constitute murder." Smith faults counsel for not objecting to the pre-sentence report and argues that, "[b]ut for counsel's failure to object, Mr. Smith would not have been sentenced to 140 years" (Doc. 1 at ¶71) because only the pre-sentence report states that the shooting caused the store clerk's death. Smith argues that no evidence adduced at trial established that the shooting was the cause of death and that "[f]or all that is known, [the store clerk] could have died by any means, but because counsel failed to object to this mere statement, Mr. Smith now faces the remainder of his life behind bars." (Doc. 1 at ¶69)

Assuming that counsel's failure to object was deficient performance, Smith cannot show prejudice. Smith is not "behind bars for the remainder of his life" because of counsel's lack of an objection. The pre-sentence report states, "According to the medical examiner, [the store clerk] died as a result of the gun shot." By not objecting, counsel only alleviated the need for the medical examiner's testimony. Smith submits no basis for believing that something other than the shooting killed the store clerk. Consequently, Smith's increased sentence is not attributable to trial counsel's consenting to the pre-sentence report.

<u>Smith's Statements and Counsel's Failure to Investigate</u>:

Smith faults counsel for not moving to suppress Smith's statements to Detective Moran. According to Detective Moran's testimony, Smith waived his right to remain silent, signed a <u>Miranda</u> waiver, and voluntarily talked. Smith now claims that he advised trial counsel that the officers coerced him into admitting his involvement. Smith

also faults trial counsel for not investigating certain alibi witnesses.  An evidentiary hearing is necessary to determine what Smith advised his counsel.

Accordingly, each of Smith's allegations[5] is rejected except his claims that counsel rendered ineffective assistance by not (1) moving to suppress Smith's statements and (2) investigating Smith's alibi claim.  Smith's motion (Doc. 11) for an evidentiary hearing is **GRANTED**.   Pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b), the motion to vacate is **REFERRED** to the United States Magistrate Judge to both conduct an evidentiary hearing and file a report recommending a ruling on the remainder of Smith's motion to vacate.  The report shall include proposed findings of fact and conclusions of law.

ORDERED in Tampa, Florida, on July 20, 2011.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[5] Smith also faults counsel for not requesting an expert witness or objecting to the jury instructions.  Smith fails to develop either conclusory allegation.  Consequently, each allegation is insufficient.